UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-234-GWU

SHAWNA SMITH,                                                    PLAINTIFF,

VS.                         **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity?
       If yes, the claimant is not disabled.  If no, proceed to Step 2.
       See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical
       or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
       claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any
       impairment(s) significantly limiting the claimant's physical or
       mental ability to do basic work activities?  If yes, proceed to
       Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
       404.1520(c), 404.1521, 416.920(c), 461.921.

1

Smith

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Smith

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

3

Smith

whether objective medical evidence confirms the severity of the alleged
pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment. The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987). Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Smith

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Smith

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

Smith

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Shawna Smith, was found by an Administrative Law Judge to have "severe" impairments consisting of an anxiety disorder, a seizure disorder, and non insulin-dependent diabetes mellitus.  (Tr. 19).  Nevertheless, based in part on the testimony of the vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits.  (Tr. 21-4).

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 19 years, sixth grade reading ability and no work experience, could perform any jobs if she had no exertional limitations, but would be precluded from (1) climbing ladders, ropes, and scaffolds, (2)  working around unprotected heights or hazardous equipment, (3) driving a motor vehicle, (4) performing work involving more than simple, one or two-step instructions in a task or object-oriented work setting, (5) interacting with the general public or more than superficial

Smith

interaction with co-workers or supervisors, and (6) performing work involving "production rate work." (Tr. 342-3). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to seizures and nervousness. (Tr. 78). At the administrative hearing, she stated that the main reason that she was unable to work was bad nerves, although treatment at the Comprehensive Care Center (CCC), where she was receiving counseling and medication, had helped "a little bit." (Tr. 327). Her seizures were being treated with Depakote, but she was still having "staring spells." (Tr. 329). Her nightmares, seizures, angry outbursts, and difficulty getting along with people were corroborated by her mother's testimony. (Tr. 336, 338-41).

Medical evidence in the transcript includes office notes from a psychiatrist, Dr. John Schremly of CCC, who initially examined the plaintiff in August, 2004. (Tr. 225). He diagnosed an anxiety disorder and assigned a Global Assessment of Functioning (GAF) score of 50. (Tr. 226). A GAF score of 50 reflects "serious impairment in social, occupational, or school functioning." Diagnostic and Statistical

8

Smith

Manual of Mental Disorders (4th Edition-Text Revision) (DSM-IV-TR), p. 34.  Dr. Schremly prescribed Zoloft, which was later switched to Prozac, and the plaintiff then reported some improvement.  (Tr. 290-2).  He continued the diagnosis of anxiety disorder, and assigned a GAF of 55 in August, 2005.  (Tr. 300). A GAF score in this range reflects "moderate difficulty in social, occupational, or school functioning." DSM-IV-TR, p.34.  Dr. Schremly's most recent office note was dated December 1, 2005, when the plaintiff returned asking for a "nerve pill" in addition to Prozac, stating that she was able to do her chores but was anxious during the day.  (Tr. 298).  Dr. Schremly noted that the plaintiff had trouble concentrating and had difficulty focusing on simple questions. (Id.).  He added the medication Atarax, but did not suggest any functional restrictions.

Two psychologists conducted consultative examinations of the plaintiff.

Mr. James Leisenring examined her in June, 2004.  The plaintiff's mother indicated that many of her developmental milestones had been delayed, and that she had performed poorly in school, and was in Special Education at least part of the time.  (Tr. 196).  She spent her days at home and could do routine chores such as washing dishes, vacuuming, and making beds, but was "scared to work," and claimed to have no friends, although she did have a boyfriend.  (Id.). Mr. Leisenring conducted testing showing a full-scale IQ of 72, which appeared valid, and a sixth grade reading ability, which was consistent both with borderline intellectual

9

Smith

functioning and Special Education status.  (Tr. 197-8).  He diagnosed an anxiety disorder and borderline intellectual functioning, and assigned a current GAF of 60, reflective of moderate difficulty in functioning.  (Tr. 198).  Mr. Leisenring opined that the plaintiff would be "moderately impaired" in her ability to understand, remember, and carry out instructions and would have a "somewhat compromised" ability to respond appropriately to supervision, co-workers, and work pressures in a work setting.  (Tr. 199).

Crystal Sahner, another psychologist, examined the plaintiff same month, and noted a poor fund of information, "deficient" coping skills, and limited social and intellectual skills.  (Tr. 217-18).  Sahner diagnosed a mood disorder and borderline intellectual functioning "by history," with a GAF of 45.  (Tr. 218).  A GAF of 45 reflects serious impairment in functioning per the DSM-IV-TR.  Sahner concluded that the plaintiff's fluctuations in mood would markedly affect her ability to interact appropriately with co-workers and supervisors, and the fluctuations in mood, level of intellectual functioning, and for social skills would also markedly affect her ability to tolerate the stress and pressures of day-to-day employment.  (Tr. 219).  She would have difficulty with tasks requiring concentration, had a "somewhat limited" ability to understand instructions, and her ability to perform even simple, repetitive tasks was "moderately affected."  (Id.).

10

Smith

In resolving the conflict between the examining sources, the ALJ partially relied on the opinion of a state agency reviewing psychologist, Dr. Ann Demaree, who completed a Mental Residual Functional Capacity Assessment form in July, 2004 and noted, among other comments, that "it appears that this young lady is able to perform simple, routine tasks without difficulty." (Tr. 258). Dr. Demaree reviewed school progress reports which indicated that she was pleasant and easy to get along with (Tr. 120-4), and opined that "she should be able to relate to others without difficulty." (Tr. 258). She concluded her narrative commentary by stating that "[the plaintiff] is somewhat fearful of working, but this does not seem an impossibility and likely vocational rehabilitation would prepare her for the job market where she could perform simple, routine tasks in a task-oriented setting." (Id.).

Taken in isolation, these comments from Dr. Demaree, in conjunction with the narrative conclusions of Mr. Leisenring, do provide some support for the ALJ's hypothetical question. While Dr. Sahner found greater restrictions, the ALJ was not required to give her opinion greater weight than that of the other one-time examiner, Mr. Leisenring, and neither source prepared a detailed functional capacity assessment.

The plaintiff points out on appeal, however, that the ALJ did not appear to consider another portion of Dr. Demaree's report (which was affirmed by a later state agency reviewer, Dr. Stephen Scher) in which Dr. Demaree indicated that the

11

Smith

plaintiff would have a "moderately limited" ability to understand, remember, and carry

out detailed instructions, complete a normal workday and work week without

interruptions from psychologically based symptoms and perform at a consistent pace

without an unreasonable number and length of rest periods, and respond

appropriately to changes in the work setting.  (Tr. 254-5).  The ALJ may have

intended limitations on performing at a consistent pace to have been covered by the

hypothetical restriction positing no "production rate work," but the assessment form

completed by Dr. Demaree and by Dr. Scher also contemplates actual interruptions

in the workday and work week due to limitations on sustained concentration and

persistence.  (Tr. 254-5, 282-3).  While the ALJ is not bound by the opinions of state

agency reviewing sources, their findings must be considered.  20 C.F.R. Section

416.927(f)(2)(i) (2005).  Moreover, the Commissioner is bound to follow his own

regulations, although a de minimis procedural violation may be considered harmless

error in certain circumstances.  See Wilson v. Commissioner of Social Security, 378

F.3d 541, 547 (6th Cir. 2004).

In the present case, the most recent office note from the plaintiff's treating

psychiatrist discussed the fact that she had trouble concentrating and difficulty

focusing on simple questions. (Tr. 298). While not couched in terms of specific

functional restrictions, it is an opinion from a treating source. Under these particular

circumstances, the plaintiff's objection to the omission of the specific restrictions

12

Smith

noted by the state agency reviewer's on sustained concentration and persistence is well taken.

The decision will be remanded for further consideration.

This the 28th day of March, 2007.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**